Yes, sir. Good morning, Your Honors. My name is Douglas Topolsky, if it pleases the Court, and I am counsel for the petitioner-slash-cross-respondent UNF West. This case, in its core, really concerns a finding by an administrative law judge that three violations of Section 881 of the National Labor Relations Act occurred. One was an alleged threat made during a union information meeting. The other two were alleged unlawful interrogations with elements of futility. Generally speaking, these decisions can only be made based upon substantial evidence on the record as a whole. And what I'd like to talk about this morning, I'd like our discussion to focus on this morning, is the concept of the record as a whole. I think you'll hear a little bit later this morning. I'd like to ask you first, though, about the most significant comment, at least as I read the briefs, which is Mr. Negroni's comment, this document doesn't work here. That strikes me as a fairly outrageous statement by someone who is acting on behalf of the company when spoken to an employee or employees. Yes, sir. I think we need to place that in context, and that really is what this case concerns, is placing all of that in context. If you take a look at the record, first, the record suggests that Well, first of all, how could that statement be interpreted any other way than to say, we don't follow the rules here, you don't, you know, the union doesn't matter here, we're going on without it, or something like that? Because in the context, Your Honor, assuming that statement was said at all, which we contend it was not, Mr. Negroni never implied that at all. With respect to Mr. Seavey's, for example, the record doesn't even show that Mr. Seavey showed him the text of that Mr. Contreras. All right? The allegations also concern statements that Mr. Negroni said, let me just make sure I quote this correctly here. With respect to Mr. Negroni, I mean, with respect to Mr. Contreras, he said the company has its own policies. All right? So when you take these things in context, it's really ambiguous as to what was said, particularly when you take a look at some of the other cases that have considered arguments like this, which are You agree, do you not, that threats of futility are not permissible? Yes, sir. Obviously. So he says this document doesn't work here. Who pays your check, the company or the union? I mean, it seems to me that nothing could be more focused on as a statement of futility than those two things. Well, the law in the circuit is that a statement of futility must include a statement or implication by the company that it's going to do something to prevent collective bargaining. And that's not what this statement says. And if you compare that statement in light of some of the other cases where ambiguity has been found, you know, things such as don't do something stupid that might stop you from moving ahead in the company as in Finley Brothers is much more clear. Yet that was presumed to be too ambiguous to be a violation of the law. So to hear to say something to the extent that that doesn't go here could mean a lot of different things if it was said at all. But we also have to remember the context in which it was said, Your Honor. And this is the problem with this case. The problem with this case is, remember, Contreras was a witness who had testified in previous proceedings. And the ALJ never recognized that. Contreras was a witness who, when he testified about what happened at the May 16th statement, all right, said that he didn't remember what language the meeting was in. He didn't remember what language the slides were in. He claimed the slides said something specifically that was never said. And he also said at one point he wasn't even paying attention. So when you consider the witness's testimony as a whole, as is required by universal camera and the cases in this circuit, Contreras is not the most reliable witness. And when you consider that in light of what he said, and you consider that in light of what Mr. Negroni said, and you consider that in light of what the cases require for both utility and specificity to have a violation of the Act, the record as a whole, the record as a whole, establishes that these comments, if they even occurred in the first instance, do not rise to the level of a violation of Section 81 of the Act. And I think I can make a couple of more points a bit more clear to help the Court with that. When you take a look at the record as a whole, there are a lot of things the ALJ did not consider. And let's remember, this is a case where the Board simply rubber-stamped the ALJ decision. It's the usual case where the Board says, we adopt the findings and conclusions of the Administrative Law Judge, and they don't really have any analysis with respect to the facts about which we're speaking. On May 16th, it was pretty clear that it was the union who was raising the whole issue of whether somebody could lose something in collective bargaining. There was a presentation and it was designed specifically to address a union piece of literature wherein the union raised this issue. And it was also demonstrated, as undisputed in the record, that this union piece of literature had been used in previous campaigns, and that Mr. Ortiz, one of the consultants, knew that this was the organizer's M.O. in trying to create these issues and attribute them to either the company or one of its spokespeople. And neither the ALJ nor the Board addressed that issue. And that's a key fact, because what we have here is, A, a lot of facts that test the credibility of Mr. Contreras, and B, establish the whole background in which all of these other allegations occurred. And again, it's the record as a whole that we need to consider when we're taking a look at whether any of these statements were made. Is it our job to determine credibility? It's, Your Honor, it's not your job to determine credibility. It is the role of this Court to determine whether the credibility determinations are based on the record as a whole. And that's what we're asking the Court to do today. So to say, as the general counsel is going to say when they get up, obviously, that this case is about credibility really puts the cart before the horse. Because what the ALJ has done is exactly what the Court says you can't do in Dow Chemicals. You can't take little pieces of the record and pick and choose and put together a piece of a mosaic. You've got to use all the tiles and see what the picture presents. And that's the distinction between this case and some of the other cases. And I think it's important for the Court to send a message to the Board that you have to consider all the evidence. It's not our charge to send messages. We just decide the case. I understand that, Your Honor. But let me rephrase it a different way. There's an opportunity here to apply the law in a way that encourages the Board to consider the evidence as a whole. Because it didn't do that in this case, nor did the ALJ. And that's the difference between this case and a lot of the other cases. You have to take a look at the record as a whole. You have to take a look at things like this, all these claims come in the context of the union's MO in manufacturing, these kinds of issues. The organizer was sitting in the courtroom when this testimony was presented. Ordinarily, that would lead to an inference that the failure to call the organizer would establish the fact. The ALJ didn't even draw that inference, didn't even discuss this, okay? With respect to some of the other things, the ALJ, for example, with respect to the piece of literature at issue here, the ALJ concluded that it was prominently posted throughout the plant based upon the testimony of yet a third consultant. But the third consultant never testified to that. The best the third consultant said was that she may have seen something like that somewhere in the plant. So again, to the extent that the credibility or to the extent that the conclusion that that constituted a violation of the Act was based on an erroneous factual conclusion, then again, it's not based on substantial evidence on the record as a whole. That is another problem. We can move along. We can see that when evaluating the circumstances as a whole, neither the ALJ nor the board, because it rubber-stamped the ALJ, considered all the factors in Paseco-slash-Federal-Mogul. For example, one of the factors is, you know, did the questioning party seek to determine whether or not there was any evidence that Mr. Acides was a union supporter. And again, the judge said that there was no evidence of that in the record. However, the record shows that within minutes before Mr. Acides was allegedly questioned by Mr. Negroni, Mr. Acides had got up in the information meeting and spoken out in favor of the union and against the company, and he had a Keemster's license plate on his car. And it's unreasonable to assume that people who do those kinds of things would not demonstrate that they were for the union. So you've got that factor. How high up in the hierarchy is another factor that was not considered by the ALJ and not considered by the board. Mr. Negroni was a consultant. He wasn't even in the management chain of command. So that is not a factor that was considered by the ALJ or the board with respect to the comments made by Mr. Negroni either to Mr. Acides or Mr. Contreras. Third, the atmosphere in which the conversations took place was, again, something that was not weighed by the ALJ or the board. The cases take a look at whether or not, for example, it was a coercive atmosphere, one-on-one in the boss's office where threats were made or those kinds of things. Here, of course, there was no such atmosphere. Here, in this case, the comments were made out in the open warehouse floor where everybody could see. And the comments were relatively brief. And again, the comments were made to known union supporters. And there's no doubt about that. So to the extent that those factors weren't considered, again, what the judge did not do was consider the evidence as a whole. So those are some of the problems that we have with those things. With respect to futility, again, I would like to stress that the cases in this circuit require the threat or implication that the employer will take action to render union support futile. I mean, even if you take a look at what Mr. Negroni said on its face, there's no threat that they would take any specific action to render the exercise of Section 7 rights futile. In fact, if you take a look at the — But what about the follow-up statement? Who pays your check, the company or the union? Why can't that be read as a threat? Because we're not — there's no allegation that the statement is a coercive threat. The allegation is, A, that it's an illegal interrogation, and that, B, it has an element of futility to it. And again, there's nothing in Mr. Negroni's statement that says we won't bargain with you. In fact, in the presentation in the record, it says we will bargain. So to that extent, you know, while — while it may on its face suggest a couple of things, it certainly doesn't suggest futility, and it's certainly not an illegal interrogation in light of all the factors that Federal Mogul requires the ALJ and the board to consider in this circuit. Let's say a couple of other — The argument should just be disregarded. Pardon me? The argument — the statement should just be disregarded. No, sir, I'm not arguing that. I'm arguing it should be placed in the context of the entire record as a whole. Well, that's part of the entire record, isn't it? It's a part of it, yes, sir, but it is not the entire record. It doesn't assume, for example, that Mr. Negroni knew that Mr. Assides and Mr. Contreras were both union to try to set them up, and that he knew that, for example, Mr. Contreras had testified in a proceeding against the company and for the union before this. So if you take those factors alone and you take a look at it, it's simply unreasonable to assume that an experienced consultant like Mr. Negroni would pick the only two people who he knew would testify against him and interrogate them. That's — that's what we mean by when we consider the entire record as a whole, that that concept doesn't make sense. It's not reasonable. And again, when you base that on other things, such as — such as the fact that Mr. Aceves was a known union supporter and the judge said he wasn't, and that Mr. Contreras was confused about what happened on a regular basis and the judge never considered those things, the other side of the complete testimony, I think what we have here is we have a case where the judge did not consider the record as a whole. A couple of other points I just want to make before my time runs out. There's an issue of whether the remedy of a notice reading was appropriate. I think the briefs are pretty clear on that. These facts do not require a notice reading. And if the Board wants to lower the standard as to what is required by a notice reading, then it should have articulated that it did not do so. We also asked for certain testimony to be admitted by certain employees. And again, this would go to considering the record as a whole. The judge concluded that these isolated statements had a chilling effect on the voting unit. However, there were people in the voting unit who wanted to testify to the fact that 180 of 230 people in the unit had signed a petition and sent it to the union and the National Labor Relations Board, asking the union to stop this nonsense and leave them alone. So it's hard for the judge to come to a conclusion that this conduct somehow had a chilling effect on the unit as a whole and not allow the unit as a whole to present the other side. So we think that was a versatile error as well. Thank you. All right. Thank you, sir. You have preserved your rebuttal time. Ms. Johnson. May it please the Court, my name is Rebecca Johnson. I represent the National Labor Relations Board, and we ask that the Court enforce the Board's order in full. I'd first like to address my opposing counsel's allegations that the union had some sort of M.O. to get the company to violate the Act. In order for this Court to buy those allegations, it would have to overturn the judge's well-supported credibility findings. The judge found that the employee witnesses testified truthfully based on their demeanor, consistencies in their testimony, and the specificity of their testimony. They testified that these particular statements did take place. Likewise, the judge discredited the company witnesses based on similar reasons. So in order for the Court to buy this argument that the union is engaged in some type of misconduct, it would have to overturn the judge's supported findings. In addition— Even accepting the judge's findings, opposing counsel has pointed to a number of things that he claims the ALJ did not consider, or at least there's no indication in the decision that the ALJ considered those things. How do we evaluate that argument? Your Honor, the judge did consider many of the things that the opposing counsel claims it didn't. For example, consultant Perez's testimony that the employee rights document was The judge—that is well-supported by the record. I believe the record site is page 177. She testifies that the document looked familiar. Well, that is something that was addressed by the ALJ. My question referred to those things that opposing counsel said the ALJ made no therefore presumably or may not have considered. In particular, what did the ALJ not consider? Well, it's not up to me. Are you saying that the ALJ considered everything that needed to be considered? Yes, Your Honor. The ALJ considered the record as a whole and the totality of the circumstances. For example, company counsel claims that the ALJ didn't discuss that Contreras testified for the board in a prior proceeding, but the ALJ did find that Contreras was an open union supporter. So the ALJ did take that fact under consideration. I would take, for example, the counsel opposite says the atmosphere of the comments was disregarded by the ALJ. Comments were made in the warehouse as opposed to otherwise, as an example. So what do you say to that? Your Honor, with respect to the interrogation, the board employs the Rosmer test, which is the totality of the circumstances. It uses the Born factors, which were set forth in the Second Circuit opinion, to arrive at the totality of the circumstances. It doesn't examine each factor mechanically, and here it looked at a number of Born factors and found that many weighed in favor of the finding that the interrogation was coercive quite strongly. Admittedly, the board did not note that the interrogation took place on the warehouse floor. However, it noted many other Born factors, such as the interrogation was done by an agent charged with combating the union campaign, which tended to suggest coercion. The ALJ noted that this was not a casual, friendly, or joking conversation. Again, an indication that this conversation tended to be coercive. The ALJ also found that the employee's responses, which were evasive and sort of combative, suggested that he feared reprisals. In addition, the ALJ noted that this interrogation was coupled by a threat of futility and an additional threat that the employer controlled the purse strings. So while admittedly the ALJ did not consider all of the Born factors, under the totality of the circumstances, each of the interrogations was nevertheless coercive. Turning to the threats of futility, Negroni clearly violated the Act when he threatened that it would be futile for both Eceves and Contreras to exercise their rights under the Act. When each of the employees showed him this employee rights document, which clearly spells out employee rights under the Act, he said either, this document doesn't work here, my brother, or that this is useless, the company has its own policies. Although opposing counsel claims that these statements are ambiguous, our position is that they are quite clear, and as the ALJ found, he also found that they were quite clear. In this circuit, we acknowledge under Brown and Root that a threat of futility also requires a threat that the employer will take some action to render union support futile. In both instances, the threat of futility was accompanied by such a threat. With respect to Eceves, Negroni said, who pays your check, the company or the union? As the ALJ found, this is an employer's ultimate threat. It's reminding the employee that the company pays his salary and controls his employment. With Contreras, prior to the threat of futility, Negroni also threatens the employee that he hopes the company wouldn't hear him speaking well of the union and speaking poorly of the company. As the ALJ found, this implies adverse consequences for his union support. So under Brown and Root, this clearly is a threat of futility. Moving to the May 16th captive audience meeting, consultant Ortiz violated the Act in his extemporaneous statements before the meeting where he said that the company could reduce its employees' wages if they voted for the union. When one of the employees, Contreras, challenged him, he said, of course if the union wins, the company could reduce your wages. Who pays your salary? The company, right? Therefore, the company. There's nothing, is there, unlawful per se about a mention of a possible decrease in wages? I mean, isn't that something that has to be considered in context? Or are you saying that a statement like that is per se an unfair labor practice? Under Section 8C of the Act, an employer can state its opinion as to unionization as long as it doesn't have a threat of reprisal or a promise of benefit. The Supreme Court in the Gissel case talked about the contours of Section 8C, and an employer can make these types of comments as long as they refer to collective bargaining or to economic circumstances beyond their control. The consultant here did neither of those things in extemporaneous remarks. He doubled down when challenged and basically said the company controls the employment relationship so it can unilaterally reduce your wages in response to your union organizing drive. Were you paraphrasing there, or what were the specific words that were used, if you recall? By the labor consultant. He said, of course, if the union wins, the company could reduce your wages. Who pays your salary? The company, right? Therefore, the company has the right to reduce your salary. The Employers' Council makes a big deal about how the subsequent slide presentation references collective bargaining. Our position here is that the ALJ examined that fact, and rightfully so under the totality of the circumstances, but nevertheless found that the earlier extemporaneous remarks violated the Act and that the later sort of canned slide presentation couldn't correct the earlier unlawful Act. This is consistent with board precedent. In a case cited in our brief, Federated Logistics, the board examined a similar company slide show in a captive audience meeting. The slide show mentioned collective bargaining, but during the meeting the employer made similar remarks, similar threats of futility, threats of reduced wages, and threats of closing the plant down. The board in that case noted that it was reasonable to assume that an employee might be more influenced by a coercive statement than by a later non-coercive statement in an effort to avoid reprisals, and that case was enforced by the D.C. Circuit. Do you agree that the slide presentation should be considered as part of the overall context? I do, and the judge did consider that. The judge cited each of the slides that discusses collective bargaining, and the judge discussed them in the context of the May 16th captive audience meeting. Turning to the notice reading, the company claims that we are not in accordance with precedent in ordering this notice reading. First of all, the board has broad discretion in ordering its remedial measures, and in this case it did not abuse that discretion. The board's concern here is not necessarily the severity of the violations, but the fact that the employer is a recidivist. During a 2012 organizing campaign, the company committed very similar violations of the act. It interrogated employees, it threatened them with loss of benefits, it threatened them with futility, and it threatened them, a prime union organizer, that it would look for a way to fire him. The ALJ in that case issued a notice, traditional remedies, a notice posting. Nevertheless, the company has continued to violate the act. It flaunted the board's traditional remedy and continued to violate the act in a similar way. As this court has noted, a reading requirement is an effective but moderate way to inform employees and, more importantly, reassure them that the company will respect their rights under the act. This is necessary here. This is an ongoing organizing drive. The notice reading is necessary to return the employees to lab conditions so that they can exercise their right in a free and fair election. So the board did not abuse its discretion in ordering this remedy. If this court has no further questions, we ask that the court enforce the board's order in full. All right. Thank you. All right. Back to you, sir. Revelle. Thank you, Your Honor. Just a couple of points. One, with respect to the M.O. and the slide show on May 16th, the arguments of counsel are just that. The ALJ's decision is clear. The ALJ never considered that. So we don't know what the ALJ or the boards considered to be the impact of those slides or that M.O. The ALJ never mentioned the slide show. Is that right? They mentioned the slide show. But they did not mention the slide show in the context of the organizer putting together a program of inserting issues and then trying to blame the company. The only mention of the slide show had to do with the fact that the slides did mention that they would not – that in collective bargaining, things would go up, down, or stay the same. All right. But they – What are you saying? Pardon me? What are you saying? It wasn't explicit enough? Is that what you're – No. What I'm saying, Your Honor, is that the slide show wasn't considered in the appropriate context. It wasn't considered in the context of the union trying to manufacture issues and then blame the company for manufacturing those issues. All right. Additionally, this is another problem with the record that the ALJ confused. There is a conclusion that the comments of Mr. Ortiz happened before the slide show started. That's not supported by the record because the general counsel's own witnesses contradicted each other on that point. Mr. Contreras said that the comments were made before the slide show started. Mr. Urquiza said the comments were made after the slide show started. And what makes this comment potentially illegal is only if it's made outside the context of collective bargaining. And since the presentation subject was collective bargaining, it's hard to argue that to say you could lose benefits in bargaining is a violation of the Act because it's not. And no one ever said that Mr. Ortiz said you would lose – that you would lose benefits. And that's the difference between this case and Federal logistics. Because in Federal logistics, various managements said that they would lose benefits, that they would strike, not that they could, and that the comments were made outside the context of collective bargaining. Here it's crucial that these statements were made during a presentation about collective bargaining. So there's no violation there. I also want to point out that this Court mentioned in the Paseco case that an analysis of each element of the born factors is indispensable to a complete review. And counsel for the general counsel concedes that that wasn't done. So at the very least, this case requires a remand if it doesn't require a reversal. Once again, there was a reference to the fact that the presentation was a canned presentation. It was not. It was prepared exclusively to address the tactic of the organizer, Luna, in this case. The company took the letter that Luna presented to employees that mentioned a completely different employer, put it up on the slideshow, and said, we never said these things. And in fact, what we had said all along, that bargaining does not start from scratch. You can get more, the same, or less as a result of collective bargaining. So again, these comments were made in the context of collective bargaining. And under board law, under the law of this circuit, comments that say you could lose wages and benefits, things could go up, down, or stay the same, are not violations of the law. And as we mentioned in our briefs, Your Honor, what more could an employer do to avoid the very allegations we're faced this morning, with this morning, than to take the union's own propaganda piece, put it on a slideshow, explain why it's wrong, and then accurately describe what the law is, and then still end up before this honorable court trying to defend its actions. What more could an employer do? If all somebody has to do is put up a witness who says, yeah, I don't remember what happened. I don't remember what the slides said. I don't even remember what language the meeting was in. But I can tell you, they said that you could lose benefits if the union gets in. What do you do with Ms. Johnston's comment at the end of her argument that your company is a recidivist? Well, Your Honor, we are obviously stuck with the decision of the United States District Court for the District of Columbia. And I can't relitigate that case. And they did find us guilty of a couple of unfair labor practices. But they are not as egregious as described either in the briefs or in oral argument. And more to the point, in the case cited by the board, there was a host of egregious unfair labor practices, including terminations, threats of plant closures, strikes. Those are the kinds of things that warrant a notice reading, not a couple of 8A1s here and there of statements by individuals that don't impact anybody. Did you defend that case? Pardon me? Did you defend that case? I did, Your Honor. And I could go into great detail, but I can't. I hear you. You've answered the one and only question I asked. And I appreciate that. Thank you very much for your time. Well, you know, you're not supposed to ask a question unless you know the answer. But I took a chance. All right. Thank you. Appreciate the able argument by both sides of the briefing. And we will consider the case submitted.